# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **RONALD ROBERT PILCHER,** | Case No. 3:16-cv-617-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **NANCY A. BERRYHILL,**[1] Commissioner of Social Security, | |
| Defendant. | |

Katherine L. Eitenmiller and Brent Wells, HARDER, WELLS, BARON & MANNING, PC, 474 Willamette Street, Suite 200, Eugene, OR 97401. Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hébert, Assistant United States Attorney; UNITED STATES ATTORNEY'S OFFICE, DISTRICT OF OREGON, 1000 SW Third Avenue, Suite 600, Portland, OR 97204-2902; Michael Howard, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-2240. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Ronald R. Pilcher seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying his applications for Supplemental

Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Because the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Commissioner Carolyn W. Colvin as the defendant in this suit.

Commissioner's decision is based on the proper legal standards and the findings are supported by substantial evidence, the decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Molina v. Astrue*, 673 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* at 1110-11 (quotation omitted). The Court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.* at 1110. The Court may not substitute its judgment for that of the Commissioner. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

### A. Plaintiff's Application

Mr. Pilcher filed applications for DIB and SSI on October 6, 2011, alleging disability as of December 31, 2010. AR 123, 151. Born in October 1969, Mr. Pilcher was 41 years old on the alleged disability onset date and 45 at the time of the last of four hearings on this matter. AR 47, 82, 96, 109. He speaks English, graduated from high school, attended college courses, and earned an associate's degree. AR 63-64, 521. He alleges disability due to: chronic back pain, muscle spasms, depression, and alcoholism. AR 123. The Commissioner denied his application

initially and upon reconsideration, and he requested a hearing before an Administrative Law

Judge ("ALJ"). AR 104-05, 110-11. After an administrative hearing that was followed by three

supplemental hearings, the ALJ found Mr. Pilcher not disabled in a decision dated April 18,

2014. AR 25-34. The Appeals Council denied Mr. Pilcher's subsequent request for review on

December 4, 2015. AR 2. The ALJ's decision thus became the final decision of the

Commissioner, and Mr. Pilcher sought review in this Court.

**B.      The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §

432(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining

whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v.*

*Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.920;

*Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §

416.920(a)(4). The five-step sequential process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
        significant mental or physical duties done or intended to be done for pay
        or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
        such work, she is not disabled within the meaning of the Act. 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
        substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's
        regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
        impairment or combination of impairments is "severe" if it significantly
        limits the claimant's physical or mental ability to do basic work activities.
        20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
        this impairment must have lasted or be expected to last for a continuous
        period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
        claimant does not have a severe impairment, the analysis ends. 20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C.      The ALJ's Decision**

The ALJ performed the sequential analysis. AR 21-43. At step one, the ALJ found Mr. Pilcher had not engaged in substantial gainful activity since December 31, 2010, the alleged onset date. AR 27. At step two, the ALJ concluded that Mr. Pilcher had the following severe impairments: degenerative disc disease ("DDD"), obesity, and substance addiction disorder. *Id.* At step three, the ALJ determined that Mr. Pilcher did not have an impairment or combination of impairments that met or equaled a listed impairment. AR 29.

The ALJ next assessed Mr. Pilcher's RFC and found that he could perform light work except that he is able to stand and walk for up to six hours per day; sit for up to six hours per day; requires the option to alternate between sitting and standing for no more than one hour at a time for each; is limited to occasional climbing of ramps and stairs and should not climb ladders, ropes, or scaffolds; frequent balancing and kneeling; occasional stooping, crouching, and crawling; and should not be exposed to hazards such as exposed moving machinery or unprotected heights. AR 30.

At step four, the ALJ found that Mr. Pilcher could not perform his past relevant work. AR 32. At step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Mr. Pilcher could perform jobs that exist in significant numbers in the national economy, including telemarketer, document scanner, and parking lot cashier. AR 33. Accordingly, the ALJ found Mr. Pilcher not disabled. AR 34.

**DISCUSSION**

Mr. Pilcher contends the ALJ made the following legal errors in evaluating his case: (1) failing to order a consultative examination in order to assess DDD in his back; (2) improperly assessing the credibility of his symptom testimony; (3) improperly assessing the medical opinions of treating physician William M. Bailey, M.D., and examining physician Maxine Hoggan, Psy.D.; and (4) finding his mental impairment was not "severe" at step two; which resulted in (5) further error at step five.

**A.      ALJ's Discretion in Ordering a Consultative Examination**

Mr. Pilcher argues that the ALJ's decision was undermined by the omission of evidence related his DDD impairment, which the ALJ found severe at step two. He further avers that the ALJ should have ordered a consultative examination to assess functional limitations arising from the impairment. Mr. Pilcher contends that the evidence lent credence to his rejected symptom allegations, and supported the rejected medical opinion of his treating physician, Dr. Bailey. The Commissioner responds that a consultative examination was unnecessary because the medical expert reviewed the missing evidence and opined that Mr. Pilcher's DDD did not meet one of the presumptively disabling impairments in the listings, 20 C.F.R. Part 404, Subpart P, Appendix 1. Def.'s Br. 7-8.

ALJ's have "broad latitude in ordering a consultative examination . . . the government is not required to bear the expense of an examination for every claimant." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001). However, "[s]ome kinds of cases, however, do normally require a consultative examination, including those in which additional evidence needed is not contained in the records the claimant's medical sources, and those involving an ambiguity or insufficiency

in the evidence that must be resolved." *Id.* (citation, internal quotation marks and brackets, omitted).

Throughout the four ALJ hearings convened in this matter, the ALJ and plaintiff's counsel[2] discussed at various times that certain records, including medical chart notes and imaging related to Mr. Pilcher's DDD diagnosis, was not entered as evidence into the administrative record.[3] For example, at the June 19, 2013 hearing, the ALJ noted, "some radiology reports relative to the disk [sic] arrangement in the lumbar spine" were not included in the exhibit list, which were referred to as "Exhibit 7F."[4] AR 112. Plaintiff's counsel agreed, and suggested the records be added to the administrative record. *Id.* At the third hearing on February 11, 2014, medical expert Ollie Raulston, D.O., testified that he had reviewed the opinion and summary of "Dr. Gary Ward" in Exhibit 7F, who apparently treated Mr. Pilcher's back condition, interpreted an MRI of the lumbar spine, and provided an assessment thereof. AR 51-52. Dr. Raulston also indicated he had reviewed a "neurosurgical evaluation" by "Dr. Michael Mason." AR 52. Dr. Raulston explained that Drs. Ward and Mason interpreted the

---

[2] The Court recognizes that Mr. Pilcher was represented by his prior attorney, W. Todd Westmoreland, at each of the four ALJ hearings in this matter. Although Mr. Pilcher is no longer represented by Mr. Westmoreland, the Court simply refers to Mr. Westmoreland as "plaintiff's counsel" to avoid confusion.

[3] Specifically, Mr. Pilcher had submitted a prior claim for disability and was found disabled by an ALJ, but later the ALJ's decision was revoked when the Appeals Council determined that Mr. Pilcher's work activity made him ineligible for benefits. *See* AR 111. In the course of gathering evidence for Mr. Pilcher's instant claim, some, but not all, of the exhibits from the first administrative proceeding were included. As such, there appears to have been confusion on the administration's part regarding what exhibits were to be included. The internal confusion was explicitly noted by the ALJ at the second hearing, which was suspended because the medical examiner had not been provided all of the exhibits. *See* AR 101-06.

[4] All of the exhibits in the instant administrative record include a "B" in front of the exhibits number, i.e. "Exhibit B4E," "Exhibit B7F." The record does not include any exhibit labeled "7F."

medical imaging as showing "multiple changes in the lumbar spine," "mild left L5 irritation," and "L3-4 broad based bulge and mild stenosis and L4-5 mild stenosis and L5-S1 broad based bulge, more prominent left than right with root possibly slightly compressed." *Id.* Dr. Raulston testified that he did not "recall any neurological deficits" in Mr. Pilcher's medical examinations. *Id.* Dr. Raulston also stated that "none of the examiners really gave a full exam finding[.]" Based on his record review, Dr. Raulston opined that Mr. Pilcher did not meet a listing for DDD. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. AR 53.

Despite the ALJ's presumed reliance on the records from Dr. Ward (and possibly Dr. Mason) in establishing that Mr. Pilcher's DDD was a severe impairment at step two, the relevant exhibits discussed at the third hearing were never entered into the official administrative record. During the third hearing, however, the ALJ explicitly stated that although he was admitting certain exhibits into the record, he was only "taking notice" of the exhibits from Mr. Pilcher's prior file, including the evidence generated by Drs. Ward and Mason in Exhibit 7F (which Dr. Raulston reviewed and assessed). AR 48. The ALJ immediately asked plaintiff's counsel if he had any objection to the exhibits, and counsel responded that he had no objection. *Id.*

The Court further notes that plaintiff's counsel did not request that Exhibit 7F be entered into the administrative record in his brief before the Appeals Council, nor does it appear that plaintiff's counsel submitted the exhibit to the Appeals Council to be made part of the record in the manner set forth in *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157 (9th Cir. 2012). AR 425-26. Moreover, Mr. Pilcher does not now request that the Court take notice of the contents of Exhibit 7F and remand this case for good cause pursuant to sentence six of 42 U.S.C. § 405(g).

Mr. Pilcher's position is that the administrative record is incomplete, not because Exhibit 7F was not entered in the administrative record, but because the ALJ did not order a consultative medical examination of Mr. Pilcher's spine, despite the fact that the ALJ did order the consultative record review and expert testimony provided by Dr. Raulston, and also the consultative neuropsychological examination and report completed after the first ALJ hearing, by Sergiy Barsukov, Psy.D. *See* AR 109, 518. In short, after listening to Dr. Raulston's testimony and his responses on cross-examination, plaintiff's counsel did not request a consultative examination, nor did counsel request a consultative examination at the fourth and final hearing later that month.

As stated above, ALJs are granted wide discretion to call additional experts to resolve ambiguities or holes in the medical record, and if a claimant is not represented by counsel during the administrative proceedings, an ALJ has a heightened duty to develop the record. *Reed*, 270 F.3d at 842; *see Widmark v. Barnhart*, 454 F.3d 1063, 1067-68 (9th Cir. 2006). However; Mr. Pilcher was represented by counsel at every step of the administrative process, including at four separate hearings and before the Appeals Council. Additionally, the ALJ exercised her discretion to develop the record by calling for a consultative examination and report from Dr. Barsukov, and by calling Dr. Raulston as medical expert to review Mr. Pilcher's medical history and provide his analysis and opinion in a hearing. AR 49-62. The ALJ accorded significant weight to both of the consultative physicians' opinions, most relevantly that of Dr. Raulston, whose opinion included his evaluation of the records that were not entered in evidence. AR 31.

Mr. Pilcher's argument for ordering a consultative examination is that the record is incomplete without a full examination. However, as the Commissioner demonstrates, Dr. Raulston discussed several instances where Mr. Pilcher's back was examined. Def.'s Br. 7; *see*

AR 437, 443, 452, 513. Further, Dr. Raulston provided detailed testimony regarding his review of medical record, and concluded that although "none of the examiners really gave him a full exam," the findings of record reflected "lack of any positive reflex changes, sensory changes, dermatomal distribution, [or] weakness either by atrophy or motor weakness." AR 54.

Considering the many opportunities Mr. Pilcher had to request a consultative examination or submit other evidence into the record, and in conjunction with the record review by Dr. Raulston and the absence of evidence of severe limitations attributable to DDD in recent chart notes, the Court declines to mandate another consultative examination. Mr. Pilcher has not established that sufficient ambiguity or insufficiency in the evidence exists to override the agency's broad discretion. *Reed*, 359 F.3d at 1197.

**B.     Plaintiff's Symptom Testimony**

There is a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vazquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1029, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 503 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281).[5] It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Ortez v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 16, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2; *see also Trevizo v. Berryhill*, ___ F.3d ___, *available at* 2017 WL 2925434, at *9 n.5 (9th Cir. 2017). The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence and individual's statements about the intensity, persistence, and limiting effects of symptoms statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, and other methods used to

---

[5] The Commissioner's brief includes a section entitled "A reasonable mind could agree that there were reasons to question Plaintiff's claims of disability." Def.'s Br. 2. To the extent the Commissioner asserts that is the proper legal standard, the argument is meritless. The Ninth Circuit unequivocally requires the ALJ to provide a specific, clear and convincing rationale in order to reject a claimant's subjective symptom testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014).

alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

At the hearings, Mr. Pilcher testified that his back pain is exacerbated by activity such that he is not able to work for more than three hours at a time. AR 64. After that, it becomes very difficult for him to stand or walk. AR 65. Mr. Pilcher also asserted that his back pain makes it difficult for him to concentrate on sedentary activities. AR 71. In his application materials, Mr. Pilcher indicated he was "unable to work at all," that "his ability to work changes from day to day," and that he has "good days and bad days." AR 378.

The ALJ found Mr. Pilcher's symptom allegations were not credible because "the objective evidence does not establish that his impairments preclude him from engaging in all basic work activity" as alleged. AR 30. The ALJ also found that Mr. Pilcher retained the capacity to perform a wide variety of activities of daily living ("ADLs"), and received only conservative treatment for his back impairment. AR 31, 32.

Because the Court may not affirm an ALJ's negative credibility finding on lack of objective evidence alone, the Court addresses first the ALJ's findings as to ADLs. The ALJ found that Mr. Pilcher was capable of performing personal care and grooming, preparing simple meals, house and yard work, cleaning, cooking, laundry, lawn mowing, and repairs. The ALJ found he could drive a car and shop for food. The ALJ also noted that Mr. Pilcher spends time with his son and friends, is involved in Cub Scouts, chats on the phone, finishes what he begins, uses a computer, reads, and takes daily walks. AR 32. Mr. Pilcher does not dispute these findings per se, but contends that although he is able to carry out the activities listed, he is only able to complete the activities incrementally throughout the day. *See, e.g.*, AR 388 ("It is necessary for me to cook and clean on a daily basis for 1 hour spread through the day.").

An ALJ may invoke ADLs in the context of determining symptom allegation credibility in order to (1) illustrate a contradiction in previous testimony, or (2) demonstrate that the activities meet the threshold for transferable work skills. *Orn*, 495 F.3d at 639. The ALJ did not identify how any of Mr. Pilcher's symptom allegations contradicted any other testimony, so the only avenue remaining is whether Mr. Pilcher's ADLs meet a threshold for transferable work skills. *Id.* The ALJ, however, did not identify how specific ADLs transferred to gainful work, but rather offered a boilerplate statement that Mr. Pilcher's ADLs suggested he was able to work. The rationale is not clear-and-convincing given the ALJ's lack of specificity. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (citation omitted).

Mr. Pilcher also assigns error to the ALJ's finding regarding conservative treatment. The ALJ found that Mr. Pilcher's medication was effective for back pain and depression; indeed, Mr.

Pilcher apparently told a treating provider that his medications were "working for his pain and depression" in May 2012. AR 31, 549. Further, Mr. Pilcher confirmed the ALJ's finding during the hearing, telling the ALJ that his medications were effective. AR 66.

Review of the record supports the ALJ's finding that conservative treatment has been effective in treating Mr. Pilcher's back pain. In October 2010, despite "a couple episodes of exacerbation" Mr. Pilcher was "able to tolerate and [was] getting things done at this time" (AR 461); in 2011, he reported his back pain was "pretty stable . . . [a]ble to do a lot of chores (AR 468); he was able to walk every day after exacerbations in the summer of 2011 (AR 473); a treating provider decreased his back pain medication in February 2012 (AR 486); he could lift weights in March 2012 (AR 551); medications were "working" in May 2012 (AR 549); and he was able to walk three times per week for 45 minutes in September 2012 (AR 546). Despite the variable record, in 2013 Dr. Bailey indicated there had been "[n]o real change in symptoms since . . . 2004" at an appointment apparently scheduled to complete disability paperwork. AR 542. Although Mr. Pilcher provides his alternative interpretation of the evidence, the ALJ's interpretation is reasonable and supported by substantial evidence; in such cases, the Court is compelled to defer to the ALJ. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

For similar reasons, the ALJ found that Mr. Pilcher's symptom allegations were inconsistent with the objective medical evidence. Tr. 30. In support, the ALJ highlighted the testimony of medical expert Dr. Raulston. AR 31. As previously noted, the doctor found "no evidence of neurological deficits," and opined that Mr. Pilcher was limited to light work with some postural limitations and the option to shift positions. Dr. Raulston testified that Mr. Pilcher's degenerative disc disease was only "mild" in nature overall, as there was a "lack of any positive reflex changes, sensory changes, dermatomal changes, weakness either by atrophy or

motor weakness[.]" AR 51, 54. As such, and considering Mr. Pilcher's history of relatively conservative treatment for his back pain while retaining the capacity to do various activities, the ALJ reasonably inferred that Mr. Pilcher's allegations of severely disabling symptoms were not supported by the objective evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

Mr. Pilcher further argues that the ALJ's objective evidence rationale is flawed because the administrative record did not include records from the time of his DDD diagnosis in 2002. As discussed above, however, Dr. Raulston provided analysis of the records that were not in evidence, including objective examination findings. AR 51. The ALJ reasonably relied on Dr. Raulston's opinion, and Mr. Pilcher does not challenge Dr. Raulston's assessment on review.

Accordingly, the ALJ provided a number of valid rationales in support of his finding that Mr. Pilcher's symptom testimony was not completely credible. Although the ALJ failed to provide a thorough assessment of why Mr. Pilcher's ADLs contradicted his symptom allegations, the ALJ provided other valid reason to find his symptom testimony less than fully credible. As such, the Court affirms the ALJ's assessment. *Batson*, 359 F.3d at 1197 (ALJ's symptom assessment may be upheld even if not all of the ALJ's reasons for rejecting a claimant's testimony are valid); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (relevant inquiry is not whether the ALJ would have made an different decision absent any error, but whether the decision remains legally valid, despite such error).

**B.      Medical Opinion Evidence**

Mr. Pilcher argues that the ALJ improperly rejected opinions provided by his treating physician, Dr. Bailey, and an examining psychologist, Dr. Hoggan. The ALJ is responsible for resolving conflicts in the medical record, including conflicting physicians' opinions. *Carmickle*,

533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Additionally, the ALJ must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with a treating physician's opinion, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's ADLs. *Tommasetti*, 533 F.3d at 1040. It is error to ignore an examining physician's medical opinion without providing reasons for doing so; an ALJ effectively rejects an opinion when he ignores it. *Smolen*, 80 F.3d at 1286.

### 1.   *Dr. Bailey*

Dr. Bailey completed an RFC worksheet in 2013. AR 535-40. Dr. Bailey indicated that Mr. Pilcher was extremely limited by lower back pain such that he could lift ten pounds only

occasionally, could sit in a fitted chair for a full workday, required a cane for ambulation, and would have attendance problems when his DDD was exacerbated. AR 535-36, 540. The ALJ accorded little weight to Dr. Bailey's assessment, and provided three rationales for rejecting the doctor's opinion: (1) it was not supported by the objective medical record; (2) it was not supported by Mr. Pilcher's ADLs, and (3) Dr. Bailey's opinion appeared "reflective of a position of 'advocate.'" Tr. AR 31.

Mr. Pilcher argues that because Dr. Bailey was privy to the chart notes from Dr. Ward that were not entered in evidence, the ALJ's first rationale was invalid. As discussed above, however, Dr. Raulston provided summary and analysis of the record, including Dr. Ward's treatment notes and Dr. Bailey's treatment notes and RFC assessment, and found the examination results therein did not support Dr. Bailey's assessed limitations. Tr. 53. The ALJ therefore credited Dr. Raulston's opinion and rejected Dr. Bailey's opinion on that basis, which satisfies the specific-and-legitimate legal standard.

Furthermore, on review, the ALJ's finding is supported by substantial evidence. For example, Mr. Pilcher reported to Dr. Bailey in 2009 that he was "feeling good at this time" (AR 431); was "feeling good at this time" in December 2011 (AR 555); "medications [we]re working for his pain and depression" in 2012 (AR 549); was "feeling good at this time" in March 2012 (AR 551); he was "feeling pretty good" in March 2013 (AR 544). Indeed, at the majority of medical appointments of record, Mr. Pilcher was not treated for back pain at all; rather, the appointments were made predominantly to treat hypertension and depression. *See* AR 433, 436, 439, 454, 458, 461, 464, 468, 473, 544, 546, 551, 553 (decreased back pain medication), 555, 561, 563, 565, 568, 570, 572, 574, 576, 578. Although Mr. Pilcher had some exacerbations of back pain in 2009 and 2011, Dr. Bailey indicated that the pain stabilized and he was able to "do a

lot of chores" and "go on walks every day." AR 468, 473. Further, as Dr. Raulston summarized, many of the physical examinations performed by Dr. Bailey were benign; moreover, the record reflects Dr. Bailey regularly recommended Mr. Pilcher increase his aerobic exercise. *See* AR 437, 452, 458, 468, 508, 513-14, 548, 552, 555.

Mr. Pilcher argues that Dr. Bailey recommended that he apply for disability benefits, noting that "I do not feel [Mr. Pilcher's] back is going to improve, nor that it would allow him to find a meaningful job at this time." Pl.'s Reply 2; AR 432. However, as noted above, the treatment records reflect that Mr. Pilcher's back did improve, as evinced by Mr. Pilcher's reports of "feeling pretty good," getting exercise, lifting weights, and getting effective relief from medications. Mr. Pilcher further argues that Dr. Bailey's assessments are "supported by the more thorough examinations performed by Dr. Ward," but the medical examiner flatly disagreed with that sentiment. AR 52-54. Mr. Pilcher also argues that "treatment notes do not document thorough examination of Plaintiff's back," but a lack of objective evidence of functional limitations cut against, not for, an award of disability benefits. *See* Pl.'s Br. 15. Despite Mr. Pilcher's alternative interpretations of the medical record, the Court must uphold the ALJ's interpretation because it is rational and supported by substantial evidence. *Burch*, 400 F.3d at 680-81. The ALJ's first rationale for rejecting Dr. Bailey's sedentary limitation is affirmed.

Mr. Pilcher argues that the ALJ erred in rejecting Dr. Bailey's opinion based on his ADLs. The ALJ, however, did not provide specific examples of the ADLs that contradicted Dr. Bailey's assessment, and as discussed earlier, the ALJ did not adequately explain why Mr. Pilcher's symptom testimony was belied by his ADLs. The Commissioner argues that although the ALJ explained her decision on the issue "with less than ideal clarity," the Court should uphold it because the "agency's path may reasonably be discerned." Def.'s Br. 6 (quoting

*Molina*, 674 F.3d at 1121). Although there is some merit to the Commissioner's argument insofar as several of Dr. Bailey's own chart notes and the ADLs described by Mr. Pilcher in his own application materials suggest greater functional capacity than that assessed by the doctor, the ALJ's boilerplate rationale falls short of the applicable legal standard.

Mr. Pilcher also argues the ALJ erroneously found Dr. Bailey had taken on the role of "patient advocate" in his 2013 assessment. The Commissioner does not rely on this rationale in support of the ALJ's decision, and because the ALJ did not provide evidence of actual improprieties, the Court finds the rationale, as stated, inadequate. *See* Def's Br. 6-7.

Nevertheless, although not all of the ALJ's rationales for rejecting Dr. Bailey's opinion met the requisite legal standard, reversal is not appropriate because the ALJ's first rationale was specific and legitimate, and supported by substantial evidence in the record. Accordingly, the ALJ's finding is affirmed. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (ALJ errors are harmless if they are inconsequential to the ultimate non-disability decision)).

##    2.    *Dr. Hoggan*

Dr. Hoggan performed a neuropsychological evaluation and produced a written report in November 2011. AR 495-501. Dr. Hoggan diagnosed dysthymic disorder, Alzheimer's-type dementia (the only time this has been diagnosed of record), noted dependent personality traits, and observed psycho-social stressor including his alleged loss of ability to work. AR 500. The doctor opined that Mr. Pilcher had "marked limitations" in social functioning due to "mental confusion." She further opined that Mr. Pilcher's symptoms were so severe that he met three separate impairment listings: Affective Mental Disorder (§ 12.04), Anxiety-Related Disorder (§ 12.06), and Personality Disorder (§12.08). AR 501; *see* 20 C.F.R. Pt. 404, Subpt. P., App. 1.

The ALJ accorded Dr. Hoggan's opinion little weight. AR 29. He found that her opinions were not supported by the objective medical evidence or treatment notes, and therefore, in arriving at her conclusions, she must have relied on Mr. Pilcher's subjective complaints "or was simply attempting to support [his] social security application." AR 29. Instead, the ALJ accorded significant weight to the neuropsychological evaluation of Dr. Barsukov, who submitted an evaluation and opinion in July 2013. *See* AR 28-29, 518-531. Dr. Barsukov noted mild difficulty in some areas, but concluded that Mr. Pilcher did not have any limitations in social functioning or the ability to remember, understand, and carry out simple instructions. Indeed, Dr. Barsukov found that upon objective testing, Mr. Pilcher scored in the "superior range" in attention and concentration, "superior range" in IQ, and memory in the "average range." AR 530-31.

The ALJ did not err in according more weight to Dr. Barsukov's opinion than that of Dr. Hoggan. "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti*, 533 F.3d at 1041-42 (citation omitted). Where there are conflicting medical opinions, "the ALJ is charged with determining credibility and resolving the conflict." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (citation omitted). Here, because both physicians were examining medical sources, neither was entitled to special deference.

Mr. Pilcher argues that Dr. Hoggan's opinion was supported by objective medical evidence, including her own psychometric testing. Pl.'s Br. 17. However, review of Dr. Hoggan's test results reflect that although Mr. Pilcher was anxious, he "attended well to the tasks at hand," was "pleasant and cooperative," and exhibited average IQ; but displayed moderate memory impairment, and "was experiencing a moderately severe mental disorder . . . indicated by dysthymia, or a low level depression." AR 497-98. Mr. Pilcher's argument is unpersuasive, as despite Dr. Hoggan's relatively extreme finding that he met three listings, the objective testing

she performed reflected fairly normal functioning, aside from moderate memory impairments. AR 497, 500-01. Instead of adopting Dr. Hoggan's conclusions, the ALJ properly exercised her discretion in adopting those of Dr. Barsukov's, which reflected some limitations in memory, but no problems engaging in social interactions. AR 530. Further, Dr. Barsukov was aware that his medical assessment significantly deviated from Dr. Hoggan's, and opined that Mr. Pilcher's symptoms had become better managed, which improved his cognitive abilities. AR 531. That sentiment is supported by Mr. Pilcher's own admission that his depression was "now managed with self-care and medications," that he rated it 3/10 (10 being worst); accordingly, even though Dr. Barsukov agreed with the diagnosis of dysthymia, he found it was in partial remission on medications. AR 530.

Mr. Pilcher argues that his improved mental functioning during Dr. Barsukov's evaluation demonstrated that his depression symptoms wax and wane, and that Dr. Bailey's assessment should therefore be understood in that context. Pl.'s Br. 17-18; *see, e.g.*, *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014). Indeed, Dr. Barsukov stated that "it was difficult to ascertain the reasons for such improvement" compared to Dr. Hoggan's evaluation, but felt that Mr. Pilcher's depression was in partial remission with medication, not merely waxing and waning, as Mr. Pilcher argues. AR 530. Moreover, Dr. Hoggan's opinion is directly contradicted by the many examples where Mr. Pilcher reported "feeling good" to Dr. Bailey. *See supra*. Accordingly, Mr. Pilcher's alternative interpretation of the evidence does not displace the ALJ's interpretation. *Burch*, 400 F.3d at 680-81.

Finally, Mr. Pilcher argues that the ALJ erred to find that Dr. Hoggan relied on subjective reports and acted as an advocate for benefits. For the same reasons described above in regards to the ALJ's evaluation of Dr. Bailey's opinion, the ALJ provided sufficient specific-and-legitimate

reasons, supported by substantial evidence, to reject Dr. Hoggan's opinion, even if the ALJ did

not adequately support the rationale of physician advocacy. As such, any error is harmless, and

the ALJ's assessment of Dr. Hoggan's opinion is therefore affirmed. *Marsh*, 792 F.3d at 1173.

## C. Assignment of Error at Step Two

Mr. Pilcher argues that the ALJ erred by finding his depression was not a severe

impairment at step two of the sequential evaluation process. The step two inquiry is a *de minimis*

screening device used to dispose of groundless claims. *Bowen*, 482 U.S. at 153-54. The claimant

bears the burden of establishing that he has a severe impairment at step two by providing medical

evidence. 20 C.F.R. §§ 404.1512, 416.912. An impairment or combination of impairments is

"not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal

effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)

(emphasis in original) (citation omitted). The ALJ is required to consider the combined effect of

all the claimant's impairments on his ability to function. *Howard ex rel. Wolff v. Barnhart*, 341

F.3d 1006, 1012 (9th Cir. 2003). Thus, if the ALJ determines that a claimant has a severe

impairment at step two, the sequential analysis proceeds and the ALJ must continue to consider

all of the claimant's limitations, severe or not. SSR 96-9p, 1996 WL 374184 (July 2, 1996).

Where an ALJ fails to identify a severe impairment at step two, but nonetheless considers at

subsequent steps all of the claimant's impairments, including the erroneously omitted severe

impairment, the error at step two is harmless.[6] *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir.

2007).

---

[6] Mr. Pilcher cites *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) for the proposition that "if there is error at step two, then the remainder of the sequential analysis is flawed as well." Mr. Pilcher's recitation of the law is correct as far as it goes, but incomplete: error at step two does not necessarily direct erroneous findings at subsequent steps if the error is harmless. *Lewis*, 498 F.3d at 911.

In support of his assignment of error, Mr. Pilcher rehashes his prior argument regarding the relative weight the ALJ assigned the medical opinions of Drs. Barsukov and Hoggan. *See* Pl.'s Br. 18-19. Whereas Dr. Hoggan opined that Mr. Pilcher's dysthymic disorder resulted in several marked limitations, Dr. Barsukov opined that his dysthymic disorder was in partial remission with medication, and that he did not have any limitations in concentration, attention, or social functioning. AR 28-29, 500, 531; *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be effectively controlled with medication are not disabling). Similarly, the reviewing agency physicians did not attribute any functional limitations to Mr. Pilcher's alleged mental impairment. AR 29. Accordingly, the ALJ adopted the agency physicians' opinions that Mr. Pilcher's mental impairments caused no more than mild limitations in any of the applicable functional areas, and had caused no episodes of decompensation. AR 28. Thus, because the ALJ is the final arbiter of conflicting medical evidence, and because the ALJ's finding is supported by substantial evidence, the ALJ did not err in finding depression was not a severe impairment at step two. *See* AR 27-29. Moreover, even if the ALJ erred by declining to find depression was a severe impairment, the import of the error is in doubt because Mr. Pilcher prevailed at step two of the sequential analysis on other grounds. *Lewis*, 498 F.3d at 911.

Mr. Pilcher also argues that the ALJ failed to consider all of his impairments, both severe and non-severe, at subsequent steps of the disability analysis. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011). Specifically, Mr. Pilcher alleges that the ALJ failed to consider his depression, anxiety, and cognitive disorder in formulating the RFC and at step five; however, Mr. Pilcher does not articulate how the ALJ's failure to find the impairments "severe" affected the RFC. In other words, Mr. Pilcher does not specify how the RFC was

erroneous from a functional perspective. As such, Mr. Pilcher has not identified any specific

harm arising from the purported step two error. *See* Pl.'s Br. 18-19; Pl.'s Reply. It is not

incumbent on the Court to comb through the administrative record, legal briefs, and case law to

generate arguments on a litigant's behalf. *See Jacobsen v. Filler*, 790 F.2d 1362, 1365 (9th Cir.

1986) (the Court is not to inject itself into the adversarial process on behalf of one party). As

such, Mr. Pilcher's argument is unavailing. The ALJ properly weighed the medical opinion

evidence and adopted the functional limitations that she deemed credible and supported by

substantial evidence; therefore, the ALJ did not err at step two. *See Bayliss v. Barnhart*, 427 F.3d

1211, 1217 (9th Cir. 2005).

**E.      Step Five Assignment of Error**

Mr. Pilcher assigns error to the ALJ's findings at step five, which he contends were

premised on an erroneous RFC and corresponding hypothetical questions to the VE. Pl.'s Br. 21.

However, because the Court does not find error in the previous steps, Mr. Pilcher merely restates

his previous arguments as to the propriety of the ALJ's evaluation of symptom testimony and the

medical opinion evidence of record. As such, the argument fails. *See Stubbs-Danielson v. Astrue*,

539 F.3d 1169, 1175-76 (9th Cir. 2008). Because the VE testified that someone with

Mr. Pilcher's limitations could perform other work in the national economy, the Commissioner

carried the burden of proof at step five in establishing that Mr. Pilcher is not disabled within the

meaning of the Act.

**CONCLUSION**

The Commissioner's decision that Mr. Pilcher was not disabled from December 31, 2010

through April 18, 2014 is based on proper legal standards, and the findings are supported by

substantial evidence. Accordingly, Mr. Pilcher's request for remand (Dkt. 1) is DENIED, and the

Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

DATED this 10th day of August, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge